IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MAURICE A. BACKUS,                          :
                                            :
                Petitioner,                 :
                                            :
        v.                                  :        Civil Action No. 21-148-RGA
                                            :
JOHN SEBASTIAN, Bureau Chief, and           :
ATTORNEY GENERAL OF THE                     :
STATE OF DELAWARE,                          :
                                            :
                Respondents.[1]             :

---

Maurice Backus.  *Pro se* Petitioner.

Andrew Vella, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware.  Attorney for Respondents.

---

**MEMORANDUM OPINION**

March 22, 2024
Wilmington, Delaware

---

[1] Petitioner was serving the Level V portion of the sentence at the Howard R. Young Correctional Institution when he filed the instant Petition.  While the case was pending, he was released to Level III supervised release (community supervision).  (*See* D.I. 5; D.I. 6; D.I. 14-8 at 125); *see also* Delaware's Inmate Locator, at https://vinelink.vineapps.com/person-detail/offender/2591296;tabIndexToSelect=0  Therefore, the Court has substituted Delaware's Bureau of Community Correction's Chief John Sebastian for Warden Kolawole Akinbayo, an original party to the case.  *See* Fed. R. Civ. P. 25(d).

ANDREWS, UNITED STATES DISTRICT JUDGE:

Petitioner Maurice Backus was an inmate at the Howard R. Young Correctional

Institution in Wilmington, Delaware when he filed the Petition for a Writ of Habeas Corpus

Pursuant to 28 U.S.C. § 2254 presently pending before the Court.[2]  (D.I. 1)  The State filed an

Answer in opposition to the allegations in the Petition.  (D.I. 13)  For the reasons discussed, the

Court will deny the Petition.

I.      **BACKGROUND**

The following facts were stipulated for Petitioner's trial:

> On or about November 12, 2016, Cpl. Jesus Caez of the Wilmington
> Police Department conducted a traffic stop of a Dodge Dakota
> operated by [Petitioner], in New Castle County, Delaware. Cpl.
> Caez conducted the stop because he directly observed [Petitioner]
> talking on a cellular telephone while operating the vehicle. When
> Cpl. Caez approached the vehicle, [Petitioner] was still speaking on
> the phone. Cpl. Caez asked [Petitioner] to stop, and [Petitioner] put
> the cellular phone in the storage area under the front dashboard.
> During the traffic stop, [Petitioner] began reaching between the
> driver's seat and the center console. When Cpl. Caez asked
> [Petitioner] about it, [Petitioner] said he was placing his cell phone
> there, even though the cell phone was already placed in the front
> storage area. Cpl. Caez removed [Petitioner] from the vehicle, and
> eventually found a bag of suspected cocaine in the defendant's
> pocket. Later, the substance was tested by NMS Labs. It came back
> positive for cocaine at a weight of 124 grams. In a subsequent
> recorded interview, after being read his *Miranda* warnings,
> [Petitioner] agreed to speak with Cpl. Caez. During that interview,
> [Petitioner] admitted that he was delivering the cocaine for someone
> else.

---

[2] Petitioner satisfies the "in custody" requirement of § 2254(a) because he was serving the Level
V portion of his sentence when he filed the Petition. *See Spencer v. Kemna*, 523 U.S. 1, 7
(1998) (the question as to whether a petitioner is "in custody" under the challenged conviction
for § 2254 purposes is determined as of the date the petition is filed and collateral consequences
of wrongful conviction are presumed to exist); *Leyva v. Williams*, 504 F.3d 357, 363 (3d Cir.
2007) (citing *DeFoy v. McCullough*, 393 F.3d 439 (3d Cir. 2005).).  Additionally, the Petition
has not been rendered moot by Petitioner's release from Level V custody to Level III probation
because the Court presumes that Petitioner still suffers "collateral consequences" from his
conviction. *See Spencer*, 523 U.S. at 7-8.

*Backus v. State,* 245 A.3d 925 925 (Table), 2021 WL 79764, at *1 (Del. Jan. 8, 2021) (cleaned up); (*see also* D.I. 14-15 at 46-48).

In March 2017, Petitioner was indicted on charges of drug dealing (Count One), aggravated possession (Count Two), and driving while using an electronic communication device (Count Three). (D.I. 14-3 at 8-9)  In May 2017, Petitioner's trial counsel filed a motion to suppress all contraband seized during the traffic stop. (D.I. 14-5 at 4-10)  The Superior Court denied the suppression motion in August 2018 after a hearing. (D.I. 14-3 at 10-69)

On October 3, 2017, Petitioner waived his right to a jury trial. (D.I. 14-1 at Entry No. 26) That same day, the State entered a *nolle prosequi* on the driving while using an electronic communication device charge (Count Three), and the Superior Court held a bench trial.  The Superior Court found Petitioner guilty of drug dealing and aggravated possession. (D.I. 14-1 at Entry Nos. 27, 28)  The Superior Court merged the drug dealing and aggravated possession charges for sentencing and, on April 11, 2018, the Superior Court sentenced Petitioner to twenty-five years at Level V incarceration, suspended after five years for eighteen months of Level III probation. (D.I. 14-2 at 15-18; D.I. 14-8 at 125; D.I. 14-15 at 64)  Petitioner appealed, challenging the denial of his motion to suppress. (D.I. 14-2 at 8)  On January 23, 2019, the Delaware Supreme Court affirmed the Superior Court's judgment. *See Backus v. State*, 202 A.3d 1126 (Table), 2019 WL 327963, at *3 (Del. Jan. 23, 2019).

In April 2019, Petitioner filed a *pro se* motion for postconviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion") (D.I. 14-12 at 1-29) and a motion to appoint counsel (D.I. 14-12 at 30-33)  The Superior Court granted the motion to appoint counsel. (D.I. 14-1 at Entry No. 47)  Petitioner filed an amended *pro se* Rule 61 motion in May

2

2019.  (D.I. 14-1 at Entry No. 49)  In July 2019, conflict counsel was appointed as Petitioner's

postconviction counsel; counsel moved to withdraw in August 2019.  (D.I. 14-1 at Entry No. 56)

In September 2019, Petitioner filed a reply to counsel's motion to withdraw, which reasserted the

issues Petitioner wished to be considered in his Rule 61 proceeding.  (D.I. 14-16; D.I. 14-17)  In

December 2019, Petitioner filed an amended *pro se* Rule 61 motion.  (D.I. 14-17).  The Superior

Court denied Petitioner's amended Rule 61 motion on April 23, 2020.  *See State v. Backus*, 2020

WL 1972856, at *4 (Del. Super. Ct. Apr. 23, 2020).  The Delaware Supreme Court affirmed the

Superior Court's decision in January 2021.  *See Backus,* 2021 WL 79764, at *4.

## II.      STANDARD OF REVIEW

If a state's highest court adjudicated a federal habeas claim on the merits, the federal

court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d).

Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's

decision was "contrary to, or involved an unreasonable application of, clearly established federal

law, as determined by the Supreme Court of the United States," or the state court's decision was

an unreasonable determination of the facts based on the evidence adduced in the trial.  28 U.S.C.

§ 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250

F.3d 203, 210 (3d Cir. 2001).

A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if

the state court decision finally resolves the claim on its substance, rather than on a procedural or

some other ground.  *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).  The deferential

standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion

explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

As explained in *Harrington*, "it may be presumed that the state court adjudicated the claim on

the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.*

at 99.  The Supreme Court expanded the purview of the *Richter* presumption in *Johnson v.*

*Williams*, 568 U.S. 289 (2013).  Pursuant to *Johnson*, if a petitioner has presented the claims

raised in a federal habeas application to a state court, and the state court opinion addresses some

but not all of those claims, the federal habeas court must presume (subject to rebuttal) that the

state court adjudicated the unaddressed federal claims on the merits.  *Id.* at 298-301.  The

consequence of this presumption is that the federal habeas court will then be required to review

the previously unaddressed claims under § 2254(d) whereas, in the past, federal habeas courts

often assumed "that the state court simply overlooked the federal claim[s] and proceed[ed] to

adjudicate the claim[s] *de novo*." *Id.* at 292-93.

Finally, when reviewing a habeas claim, a federal court must presume that the state

court's determinations of factual issues are correct.  *See* 28 U.S.C. § 2254(e)(1).  This

presumption of correctness applies to both explicit and implicit findings of fact, and is only

rebutted by clear and convincing evidence to the contrary.  *See* 28 U.S.C. § 2254(e)(1);

*Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341

(2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues,

whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## III.    DISCUSSION

The timely-filed Petition asserts the following six grounds for relief:  (1) trial counsel

provided ineffective assistance ("IATC") by failing to meet with Petitioner prior to the

suppression hearing, which led to trial counsel not challenging Officer Caez's inconsistent

testimony about officer safety (D.I. 1 at 5);  (2) trial counsel provided ineffective assistance

during the suppression hearing by not challenging the officer's testimony that Petitioner

4

possessed the cocaine in plain view (*id.* at 7); (3) appellate counsel provided ineffective assistance ("IAAC") by not communicating with Petitioner and by failing to raise the plain view issue on appeal; (4) appellate counsel provided ineffective assistance by not filing a motion for reargument from the Delaware Supreme Court's affirmance of Petitioner's conviction, and the Delaware state courts should have reviewed appellate counsel's performance under *United States v. Cronic*, 466 U.S. 648 (1984) (D.I. 1 at 10); (5) (a) trial counsel was ineffective during the suppression hearing for failing to argue that the officer's decision to forego issuing a traffic ticket for using a cell phone while driving was evidence that the officer lacked probable cause to stop Petitioner, and (b) trial counsel was ineffective for failing to challenge Count Three of the indictment on the basis that the officer never issued a traffic ticket; and (6) trial counsel was ineffective for filing a "frivolous" motion to suppress.

Petitioner presented Claims One through Six to the Delaware Supreme Court on post-conviction appeal. *(*D.I. 14-7 at 1-30) The Delaware Supreme Court explicitly denied Claims One through Five (a) as meritless and, by generally affirming the Superior Court's decision, implicitly denied Claims Five (b) and Six as meritless. *See Backus,* 2021 WL 79764, at *3-4; *see Y1st v. Nunnemaker*, 501 U.S. 797, 803-04 (1991) (under the "look through" doctrine, where "there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."). Consequently, Claims One through Six will only warrant habeas relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

The clearly established Supreme Court precedent governing ineffective assistance of trial claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984)

and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *See Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.*

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that the representation was professionally reasonable. *See Strickland*, 466 U.S. at 689. A court may deny an ineffective assistance of counsel claim by only deciding one of the *Strickland* prongs. *See id.* at 697.

However, in *Cronic*, the United States Supreme Court articulated a limited exception to *Strickland*'s requirement that a petitioner must demonstrate both deficient performance and prejudice in order to prevail on an ineffective assistance of counsel claim, holding that there are three situations in which prejudice caused by an attorney's performance will be presumed: where the defendant is completely denied counsel at a critical stage; where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing;" or where the circumstances are such that there is an extremely small likelihood that even a competent attorney could provide effective assistance, such as when the opportunity for cross-examination has been eliminated. *See Cronic*, 466 U.S. at 659 & n.25. The *Cronic* presumption of prejudice only applies when

counsel has completely failed to test the prosecution's case throughout the entire proceeding.  *See Bell v. Cone*, 535 U.S. 685, 697 (2002).

Turning to the first prong of the § 2254(d)(1) inquiry, the Court notes that the Delaware Supreme Court correctly identified the *Strickland* standard applicable to Petitioner's IATC and IAAC allegations, and also correctly identified the *Cronic* standard that Petitioner contends should have been applied to his IAAC allegations.  *See Backus*, 2021 WL 79764, at *3 n. 14, *4.  Consequently, the Delaware Supreme Court's decision was not contrary to clearly established federal law.  *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The Court's inquiry is not over, however, because it must also determine if: (1) the Delaware Supreme Court reasonably applied clearly established federal law when holding that Petitioner's IAAC claims should be reviewed under *Strickland* rather than under *Cronic*; and (2) the Delaware Supreme Court then reasonably applied the *Strickland* standard to the facts of Petitioner's case for his IATC and IAAC claims.  *See Richter*, 562 U.S. at 105-06.  When performing this inquiry, the Court must review the Delaware state courts' denial of Petitioner's ineffective assistance of counsel allegations through a "doubly deferential" lens.[3]  *Id.*  "[T]he question is not whether counsel's actions were reasonable, [but rather], whether there is any

---

[3] As explained by the *Richter* Court,

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).

*Richter*, 562 U.S. at 105 (internal citations omitted).

7

reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* When assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable." *Id.* And finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* at 101.

The Court will address the specific IATC and IACC arguments *seriatim*.

**A.  Claim One:  IATC for not Questioning Officer's Inconsistent Testimony**

During Petitioner's preliminary hearing, Officer Caez testified that Petitioner provided his registration and insurance without describing where the documents had been located.  (D.I. 14-14 at 35-36)  In his suppression motion, Petitioner argued, *inter alia*, that the officer's extension of the stop beyond what was necessary to give Petitioner a ticket violated Petitioner's constitutional rights, asserting:

> In this case, the police officer requested [Petitioner's] license, registration and insurance.  A valid license was provided to the officer.  When [Petitioner] attempted to retrieve his registration and insurance from the center console, the officer ordered [Petitioner] to exit from the vehicle where he was ordered to place his hands on the car and submit to a search of his person.
>
> It was perfectly reasonable for [Petitioner] to attempt to retrieve his insurance and registration card from the center console since the officer specifically requested him to provide them.  The officer cannot use the fact that [Petitioner] attempted to retrieve items that the officer requested as a basis to order [Petitioner] from the vehicle.
>
> In this case, as soon as [Petitioner] was ordered out of the car he was forced to submit to a pat down search.  The only information the police had at that point was under the best of circumstances for the state, use of a cell phone.  [Petitioner] had a valid driver's license.

> Therefore, the pat-down search was impermissible and everything that flowed from it, must be suppressed.

(*Id.* at 46-47)  During Petitioner's suppression hearing, the officer testified that, while waiting for backup to arrive, he asked Petitioner where his registration and insurance were located.  (*Id.* at 75-76)  The officer also testified that Petitioner stated his registration and insurance were located in the glovebox, at which time the officer directed the passenger to "grab" the documents from the glovebox.  (*Id.* at 76)

In Claim One, Petitioner alleges that trial counsel inadequately prepared for the suppression hearing by failing to meet and confer with him beforehand.  Petitioner contends that trial counsel's inadequate preparation resulted in her failing to challenge the officer's suppression hearing testimony that the passenger provided the registration and insurance from the glovebox as being inconsistent with the officer's preliminary hearing testimony that Petitioner handed him the registration and insurance.  According to Petitioner, when he turned toward the center console in the car, he told the officer he was retrieving his registration and insurance card, and he alleges that the officer subsequently permitted Petitioner to retrieve the documents from the console while they were waiting for backup to arrive.[4]  Petitioner appears to believe that challenging the officer's suppression hearing testimony as being inconsistent with the officer's preliminary hearing testimony would have demonstrated that the officer's search of

---

[4] The Court notes that the instant Petition only presents a bare-bones description of the officer's alleged inconsistent testimony.  Yet, since Petitioner attached copies of the Delaware state court decisions from his Rule 61 proceeding to his Petition, the Court looks to the IATC/inconsistent-officer-testimony argument that Petitioner presented in his Rule 61 proceeding to flesh out the details of the IATC argument he presents here.  Relatedly, the Court also looks to the affidavit from Gibbs (the car passenger) filed in support of Petitioner's Rule 61 motion for a better understanding of the underlying argument in Claim One.  Gibbs' affidavit states that: (1) Petitioner retrieved the documents from the center console and handed them to the officer; and (2) he (Gibbs) "never handed [Petitioner] or the officer any of [Petitioner's] information out of the glove box." (D.I. 14-15 at 146)

Petitioner's person violated his federal constitutional rights under *Terry v. Ohio,* 329 U.S. 1 (1968), because the search was not based on articulable and reasonable concern for officer safety.[5] (*See* D.I. 1 at 5; D.I. 14-14 at 103; D.I. 14-21 at 2-3, 21)

The Superior Court denied the IATC argument in Claim One after determining that the officer's alleged inconsistent testimony as to where and from whom the registration and insurance were produced was irrelevant to the trial court's denial of Petitioner's suppression motion. *See Backus,* 2020 WL 1972856, at *2-3. The Delaware Supreme Court affirmed the Superior Court's denial of the IATC argument in Claim One for two reasons. First, the Delaware Supreme Court agreed that Petitioner failed to establish a reasonable probability that the trial court's "conclusions would have been different had counsel engaged in further questioning on this subject" of whether the officer "acted reasonably out of a concern for officer safety." *See Backus,* 2021 WL 79764, at *3. Second, the Delaware Supreme Court stated that "the issues of whether the stop was impermissibly extended or whether a pat down was warranted are not dispositive" because, as it held on direct appeal: (1) the officer properly ordered Petitioner to exit the car pursuant to a valid traffic stop; and (2) once Petitioner exited the vehicle, the officer could see the cocaine in plain view hanging out of Petitioner's right-side pocket. *Id.*

Petitioner's instant argument appears to challenge the factual findings underlying the Delaware Supreme Court's determination that Petitioner failed to satisfy the prejudice prong of *Strickland.* The Court provides the following summary of information from the preliminary hearing, suppression motion, and suppression hearing transcripts that it views as most relevant for analyzing whether the Delaware Supreme Court reasonably determined the facts.

---

[5] Petitioner appears to suggest the officer lied and changed his story between the preliminary hearing and the suppression hearing. (*See* D.I. 14-7 at 35)

1. During the preliminary hearing, the officer testified that Petitioner provided his registration and insurance without describing where those documents had been located. (D.I. 14-14 at 35-36)

2. In the suppression motion, trial counsel asserted that the officer requested Petitioner's license, registration, and insurance, and Petitioner "attempted to retrieve his registration and insurance from the center console." (*Id.* at 47) Trial counsel argued that it "was perfectly reasonable for [Petitioner] to attempt to retrieve his insurance and registration card from the center console since the officer specifically requested him to provide it. The officer cannot use the fact that [Petitioner] attempted to retrieve items that the officer requested as a basis to order [Petitioner] from the vehicle." (*Id.* at 47)

3. The officer provided the following consistent testimony during both the preliminary and suppression hearings:

> a. Petitioner was on his cell phone when the officer approached the car. (*Id.* at 23, 66)
>
> b. The officer told Petitioner to hang up the phone. (*Id.* at 23, 66)
>
> c. Petitioner hung up the phone and placed it on the center console towards the front of the car. (*Id.* at 23, 28, 66)
>
> d. The officer asked Petitioner for his driver's license, Petitioner gave him the driver's license, and then Petitioner "furtively" turned toward the console. (*Id.* at 23, 66)
>
> e. The officer had not yet asked Petitioner for his registration or his insurance when Petitioner turned toward the console. (*Id.* at 29, 71-72)
>
> f. Petitioner's furtive movement consisted of him sliding his left arm across his waist while simultaneously turning towards the center console with his back to the officer. (*Id.* at 23)
>
> g. It looked like Petitioner placed something near the rear of the console after he turned, but the officer's view was obstructed by Petitioner's body. (*Id.* at 23-24)
>
> h. When the officer asked Petitioner what he had placed in the console, Petitioner responded it was his cell phone. However, the officer could see Petitioner's cell phone at the front of the console near the dashboard. (*Id.* at 23-24)

11

      i. The officer was concerned for his safety because he was not sure if Petitioner was trying to obtain or conceal a weapon of some sort from the center console. (*Id.* at 24, 27, 73-74)

4. The suppression hearing transcript further reveals:

      a. The officer explicitly testified that he asked Petitioner for his license before Petitioner made the "furtive" movement, and he asked Petitioner for his registration and insurance after Petitioner made the "furtive" movement while the officer was waiting for backup. (*Id.* at 71-74)

      b. Trial counsel asked the officer, "Are you sure you didn't ask for his registration and insurance when he went to make that furtive movement," to which the officer responded "No." (*Id.* at 74)

      c. Trial counsel asked the officer, "Well, didn't he [Petitioner] tell you that his registration and insurance were in the center console," to which the officer responded "No." (*Id.* at 74)

5. The officer provided the following testimony during the suppression hearing that he did not provide during the preliminary hearing:

      a. When he asked Petitioner for his registration and insurance, he also asked Petitioner where those documents were located. Petitioner stated they were in the glove box, and the officer told the passenger Gibbs to "grab it." (*Id.* at 75-76)

      b. Gibbs grabbed the documents and handed them to the officer. (*Id.* at 76)

6. Gibbs provided the following testimony during the suppression hearing:

      a. Petitioner's cell phone had fallen to the ground before Petitioner gave the officer his license. The cell phone made a sound, and the officer told Petitioner to pick up the phone and put it on the dash. (*Id.* at 87-88)

      b. Petitioner picked up the phone but did not put it in the console area. (*Id.* at 89-90)

> c. Petitioner turned his body *toward* the officer to give the officer his I.D. (*Id.* at 91) (emphasis added).

7. Gibbs *did no*t provide the following testimony during the suppression hearing:

> a. Petitioner turned toward the console with his back toward the officer.
>
> b. The officer told him (Gibbs) to retrieve the registration and insurance from the glove box.
>
> c. Gibbs retrieved and handed over any documentation to the officer. (*See id.* at 84-91)

8. During the suppression hearing, trial counsel conceded that the traffic stop was supported by reasonable articulable suspicion because Petitioner was talking on his cell phone while driving. (*Id.* at 91) However, trial counsel argued that the officer unconstitutionally prolonged the stop beyond what was needed to issue a traffic citation, and that the officer's pat-down of Petitioner was not supported by a reasonable articulable suspicion that Petitioner was armed and dangerous. (*Id.* at 103-104) To support her contention that the officer lacked a reasonable articulable suspicion that Petitioner was armed, trial counsel pointed out that Gibbs' testimony "belie[d]" the officer's testimony that Petitioner made a furtive movement. (*Id.* at 103) Trial counsel also noted that, although the officer claimed he was concerned about his safety due to Petitioner's "furtive" movement, the fact that the officer "allowed the occupants to move within the vehicle in order to procure a license – a registration and insurance by opening a glove box and moving within a vehicle" demonstrates otherwise. (*Id.* at 102)

9. When denying the suppression motion, the trial court concluded that the traffic stop was proper and noted trial counsel's concession that the traffic stop was supported by the officer's reasonable articulable suspicion. (*Id.* at 111) The trial court also concluded that the officer had reasonable articulable suspicion to fear for his safety based on Petitioner's act of "blading" (turning) his body to block the officer's view and making a furtive movement toward the console, and that the officer's call for backup constituted "corroborating evidence that [the officer] felt that he needed to take precautions for his own safety." (*Id.* at 112-113) Although the trial court noted that the officer's act of permitting Gibbs to open the glove box "is some contrary evidence," the court did "not feel that it negate[d] the reasonable conduct of the officer in having a concern for his safety."

(*Id.* at 113)  The trial court found "that the officer's testimony was
not rebutted in any substantive way by [Gibbs'] testimony." (*Id.*)

In his Rule 61 proceeding, Petitioner included an affidavit from Gibbs stating that Gibbs

never handed Petitioner or the officer any documentation out of the glove box and that Petitioner

turned toward the console in order to retrieve his insurance and registration.[6]  The Superior Court

did not explicitly mention Gibbs' affidavit when denying the IATC argument in Claim One.  *See*

*Backus*, 2020 WL 1972856, at *1, 3.  The Superior Court did, however, explain that, based on its

review of the preliminary and suppression hearing transcripts, it found that the trial court

considered Petitioner's act of "blading" his body toward the console as more relevant for

determining if the officer had a reasonable and articulable basis for being concerned about his

safety than the alleged discrepancy in the officer's testimony.  *Id.* at *3.  The Superior Court

viewed the following statement in Petitioner's *pro se* reply to the State's answer as implicitly

conceding the point that he "bladed" his body:  "Mr. Backus immediately reached toward the

center console to retrieve his registration and insurance card."  *Id.* at *3, n.47.  After stating that

Petitioner "simply present[ed] a different explanation for why he turned," the Superior Court

concluded that "further exploration of that inconsistency would not have changed the outcome of

the [suppression] hearing."  *Id.* at *3.

On post-conviction appeal, the Delaware Supreme Court acknowledged: (1) Petitioner's

assertion that he informed the officer he turned toward the center console in order to retrieve his

insurance and registration; and (2) Gibbs' affidavit that Petitioner provided to support his

---

[6] In his affidavit, Gibbs stated that he "personally never handed [Petitioner] or the officer any of
[Petitioner's] information out of the glove box.  [Petitioner] specifically gave his own
information to the officer right out of the center console where he accused [Petitioner] of
reaching for a weapon of some sort before backup arrived."  (D.I. 14-15 at 146)

assertion that he turned toward the console to retrieve his insurance and registration. *See id.* at

*2-3. Thereafter, the Delaware Supreme Court affirmed the Superior Court's denial of the IATC

argument in Claim One, opining:

> As the Superior Court determined, [Petitioner] has not demonstrated
> that there is a reasonable probability that further exploration of this
> issue would have resulted in suppression of the evidence. In ruling
> on the suppression motion, the court found that the officer
> reasonably feared for his safety as the result of [Petitioner's]
> movement in the vehicle. Counsel questioned the witnesses
> extensively regarding [Petitioner's] movement and the officer's
> observations about that movement. Although [Petitioner] disagrees
> with the court's factual findings regarding the movement and the
> officer's inferences about the reasons for the movement, we see no
> reasonable probability that the court's conclusions would have been
> different had counsel engaged in further questioning on this subject.

*Backus*, 2021 WL 79764, at *3 (cleaned up).

After reviewing the entire record – including Petitioner's version of events and Gibbs'

affidavit – the Court concludes that the Delaware Supreme Court reasonably determined the facts

when finding that the officer reasonably feared for his safety due to Petitioner's movement in the

car. During the suppression hearing, the officer testified that: (1) Petitioner made a furtive

movement toward the center console after he provided the officer with his license. (D.I. 14-14 at

71); and (2) after Petitioner's furtive movement, the officer told Gibbs to get Petitioner's

insurance and registration from the glove box (*id.* at 76). During the suppression hearing, Gibbs

testified to the following sequence of events: (1) the officer stopped the car; (2) the phone must

have fallen to the ground while the car was stopping; (3) Petitioner gave the officer his license;

(4) the phone made a noise while it was on the floor; (5) the officer told Petitioner to pick the

phone up and put it on the dash; (6) Petitioner picked the phone up and put it on the dash; and (7)

Petitioner did not turn to stop the cell phone from falling. (*Id.* at 86-90)

In this case, the trial court based its findings of fact relevant to its denial of the suppression motion on its assessment of the officer's and Gibbs' credibility at the suppression hearing and, after noting the difference in the testimony offered by each individual, found the officer's testimony more credible. Even though Gibbs' affidavit supports Petitioner's version of events, the Court notes that the information Gibbs supplied in his affidavit differs from the information Gibbs provided during the suppression hearing.[7] On federal habeas review, courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court." *Marshall v. Lonberger*, 459 U.S. 422, 434-35 (1983). Thus, after considering the Delaware Supreme Court's decision in context with (1) the trial court's reasoning for denying the suppression motion and (2) this Court's summary of the record as set forth above, the Court concludes that the Delaware Supreme Court reasonably determined the facts based on the evidence presented at the suppression hearing when finding that the officer reasonably feared for his safety as a result of Petitioner's actions in the car. Given this determination, the Court further concludes that the Delaware Supreme Court reasonably applied *Strickland* in holding that Petitioner did not establish a reasonable probability that the outcome of the suppression hearing would have been different but for trial counsel's failure to pursue the inconsistency between the officer's preliminary hearing testimony and his suppression hearing testimony. Accordingly, the Court will deny Claim One for failing to satisfy the standard articulated in § 2254(d).

## B. Claim Two: IATC for not Questioning Officer's "Plain View" Testimony

---

[7] For instance, in his affidavit, Gibbs stated that the only time Petitioner moved during the traffic stop was when the officer ordered Petitioner to place the cell phone on the dash and to provide his registration and insurance card out of the center console. (D.I. 14-15 at 146) In contrast, during the suppression hearing, Gibbs did not testify that Petitioner retrieved his insurance and registration from the console.

The plain view doctrine allows an officer to seize, without a warrant, an item (1) that is in plain view; (2) while observed from a lawful vantage point (*i.e.*, the officer did not violate the Fourth Amendment in arriving at the lawful vantage point); and (3) its incriminating character is immediately apparent. *See Horton v. California*, 496 U.S. 128, 135-37 (1990).  In Claim Two, Petitioner contends that trial counsel inadequately challenged the officer's suppression hearing testimony that Petitioner had possessed the cocaine in plain view.  Petitioner alleges trial counsel should have questioned the officer more thoroughly about his statements that the black bag "was just hanging out of the pocket" (D.I. 14-10 at 51-52) and that he (the officer) could see the cocaine in the non-transparent black bag (D.I. 14-2 at 16).  For the following reasons, the Court concludes that Claim Two does not warrant relief.

At Petitioner's hearing on his motion to suppress, the State asked the officer:

> Q.  After he gets steps (sic) out of the vehicle, what happens next?
>
> A.  He steps out of the vehicle. I go to pat him down. I had him place his hands up on the truck. I pat him down, when I observed the right – and he had a thin, like, a black hoodie jacket. And protruding out of the pocket, hanging out of the pocket was, like, a black bag, within that black bag was, like, a heat-sealed, vacuum-sealed clear bag containing a off-white chunky substance, which, from training and experience, I recognized to be cocaine.
>
> Q.  And you said it was protruding out of the jacket?
>
> A.  Yes.
>
> Q.  So were you able to see it from where you were?
>
> A.  Yes.
>
> Q.  Did you have to remove it in order to see it?
>
> A.  No, because it was just hanging out of the pocket.
>
> Q.  Okay.  So you saw it – in other words, you saw it not as a result of a pat-down search, is that correct?

17

A.  Yes.

Q.  Did you end up seizing the bag then?

A.  Yes.

(D.I. 14-10 at 51-52)

Subsequently, trial counsel cross-examined the officer:

Q.  And when he got out of the car, you made him put his hands on the car, right?

A.  Yes, ma'am.

Q.  And the purpose of that was to conduct a pat-down?

A.  Correct.

Q.  Did you actually conduct a pat-down?

A.  I started to; yes, ma'am.

Q.  And what does that mean.

A.  I began on the left side. I started – I went down. As I shift over to the right side, that's when I observed the package.  It turned out to be cocaine hanging – protruding, hanging out of his pocket.

Q.  Okay. But you didn't know that, right?

A.  I didn't know what?

Q.  You didn't know it was cocaine until you opened the bag, right?

A.  It was sticking out.

Q.  Okay. Well, you said it was in a black bag.

A.  It's a black bag – listen – it's a black [bag], and protruding out of the black bag, is hanging out the black bag. So when I took it out, I see the clear bag with the cocaine. But when I grabbed it, that cocaine was inside of the black bag.

18

> Q. Well, you couldn't see that from where he was sitting in the vehicle, right?
>
> A. No, no, not where he was sitting. Because it turned out to be in his right pocket, where it's away from me towards the center console.

(D.I. 14-10 at 70-71)

These excerpts from the suppression hearing demonstrate that: (1) trial counsel questioned the officer about his ability to see the cocaine inside the black bag; and (2) the officer replied that he could see the bag with the cocaine because it was protruding out of the black bag which, in turn, was sticking out of Petitioner's pocket. When denying the suppression motion, the trial court explicitly found that the officer "observed, in plain view, hanging out of the jacket [Petitioner] was wearing what appeared to be a bag of cocaine" and concluded that "the plain view observation of the cocaine is constitutionally permissible." (D.I. 14-14 at 111, 113) When denying the instant IATC argument in Petitioner's Rule 61 proceeding, the Superior Court identified as a fact question the issue as to whether the cocaine was in plain view, focused on Petitioner's failure to provide evidence contradicting the officer's testimony, and opined: "If the clear plastic holding the cocaine was protruding outside the black bag in which it was contained, and both were visible to the officer, as he testified, the cocaine was in plain view." *Backus*, 2020 WL 1972856, at *3. The Delaware Supreme Court affirmed the Superior Court's decision, explicitly holding that, given the absence of "new, extrinsic evidence" contradicting the officer's plain view testimony, Petitioner failed to demonstrate "a reasonable probability that the court would have suppressed the evidence if trial counsel had elicited additional testimony regarding the plain-view issue." *Backus*, 2021 WL 79764, at *3.

In sum, during Petitioner' Rule 61 proceeding, both state courts treated the plain view issue as factual, and both courts relied on the absence of any evidence contradicting the officer's

19

testimony when concluding that the cocaine was in plain view.  In this proceeding, Petitioner has

not provided any clear and convincing evidence rebutting the officer's plain view testimony.

Therefore, the Court accepts as reasonable the Delaware Supreme Court's factual determination

that the officer observed the cocaine in plain view.

I also note that Petitioner does not identify the potential testimony he believes trial

counsel would have elicited with further questioning about the officer seeing the black bag

protruding from Petitioner's pocket, and merely speculates as to the value of that unidentified

testimony.  Given these circumstances, the Court concludes that the Delaware Supreme Court

reasonably applied *Strickland* when holding that Petitioner failed to establish a reasonable

probability that the trial court would have suppressed the evidence if trial counsel had questioned

the officer in more depth about the plain view issue.  Accordingly, the Court will deny Claim

Two for failing to satisfy § 2254(d).

### C.  Claims Three and Four: IAAC for Failing to Raise Plain View Issue and Failing to Request Reargument

Next, Petitioner contends that appellate counsel provided ineffective assistance by failing

to raise the plain view issue on direct appeal and also by failing to request reargument after the

Delaware Supreme Court affirmed his convictions on direct appeal.  Petitioner asserts this Court

should apply the *Cronic* standard to these arguments and presume he was prejudiced because

appellate counsel abandoned him by: (1) not communicating with him during his appeal; (2) not

raising the plain view issue on appeal even though Petitioner asked appellate counsel to do so;

and (3) not responding to Petitioner's three requests to file a "Rule 18 reargument" after the

Delaware Supreme Court affirmed Petitioner's convictions.  (D.I. 1 at 8, 10)

Petitioner raised his allegations regarding appellate counsel's performance and his

argument that the Delaware state courts should have reviewed the IAAC allegations under

20

*Cronic* rather than *Strickland* in his Rule 61 motion and on postconviction appeal.  The Superior

Court did not address Petitioner's *Cronic* argument.  Instead, applying *Strickland*, the Superior

Court held that appellate counsel's actions were not deficient and did not prejudice Petitioner.

*See Backus*, 2020 WL 1972856, at *4.  In contrast, the Delaware Supreme Court did address –

and reject – Petitioner's *Cronic* argument on post-conviction appeal, opining:

> [Petitioner] argues that his appellate counsel was ineffective because
> he never met with nor communicated with [Petitioner] and because
> he failed to file a motion for reargument of this Court's order
> affirming [Petitioner's] conviction. [Petitioner] contends that, had
> his appellate counsel done those things, he would have raised the
> plain-view and inconsistent-testimony issues on appeal. Relying on
> *United States v. Cronic*, [Petitioner] asserts that we should presume
> that he was prejudiced because, by failing to raise those issues,
> counsel entirely failed to subject the prosecution's case to
> meaningful adversarial testing. We disagree.  Appellate counsel did
> not entirely fail to subject the case to meaningful adversarial testing;
> rather, appellate counsel filed a merits brief that argued that the
> police violated [Petitioner's] federal and state constitutional rights
> by conducting an investigative detention that exceeded the
> permissible bounds of the traffic stop. Under the circumstances of
> this case, *Strickland*, and not *Cronic*, applies. [Petitioner] therefore
> must demonstrate that he was prejudiced by appellate counsel's
> alleged ineffectiveness. For the reasons discussed above with
> respect to [Petitioner's] claims that his trial counsel was ineffective,
> we conclude that [Petitioner] was not prejudiced by appellate
> counsel's failure to raise the inconsistent-testimony and plain-view
> issues, either in the initial briefing on direct appeal or in a motion
> for reargument.

*Backus*, 2021 WL 79764, at *4.

The fact that appellate counsel filed a merits brief challenging the legality of the officer's

act of ordering Petitioner out of the car demonstrates that appellate counsel did not completely

fail to subject the State's case to meaningful adversarial testing.  *See Smith v. Robbins*, 528 U.S.

259, 285 (2000).  Consequently, the Court concludes that the Delaware Supreme Court reasonably applied clearly established federal law when declining to apply the *Cronic* presumption of prejudice to Claims Three and Four.

Having determined that *Cronic* is inapplicable, the Court must determine whether the Delaware Supreme Court reasonably applied the *Strickland* standard to the facts of Petitioner's case when denying the IAAC arguments in Claims Three and Four.  Claims alleging ineffective assistance by appellate counsel are evaluated under the same *Strickland* standard applicable to an ineffective assistance of trial counsel claim.  *See Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004).  An attorney's decision about which issues to raise on appeal are strategic,[8] and an attorney is not required to raise every possible non-frivolous issue on appeal.  *See Smith*, 528 U.S. at 272; *Jones v. Barnes*, 463 U.S. 745 (1983).  In the appellate context, the test for prejudice under *Strickland* "is not whether petitioners would likely prevail upon remand, but whether [the court of appeals] would have likely reversed and ordered a remand had the issue been raised on direct appeal."  *United States v. Mannino*, 212 F.3d 835, 844 (3d Cir. 2000); *see also Smith*, 528 U.S. at 287-88 (explaining that the question when determining prejudice in the appellate context is whether the issues counsel did not raise "were clearly stronger" than the issues counsel did raise).

During the suppression hearing, the trial court explicitly found that the cocaine evidence was in plain view after Petitioner exited the car.  (D.I. 14-14 at 106)  Although appellate counsel did not challenge the trial court's plain view determination on direct appeal or on reargument, the Delaware Supreme Court explicitly "defer[red]" to the trial court's factual finding that the officer

---

[8] *See Albrecht v. Horn*, 485 F.3d 103, 138 (3d Cir. 2007); *Buehl v. Vaughn*, 166 F.3d 163, 174 (3d Cir. 1999) (stating counsel is afforded reasonable selectivity in deciding which claims to raise without specter of being labeled ineffective).

"saw the cocaine in plain view," and then proceeded to determine that the "three other requirements for admission of evidence under the plain-view doctrine were also satisfied." *Backus*, 2019 WL 327963, at *2.

As previously discussed, this Court accepts and defers to the Delaware state courts' factual determination that the officer saw the cocaine evidence in plain view. *See supra* at Section III.B. Appellate counsel is not required to raise non-meritorious arguments on direct appeal. Therefore, Petitioner has not demonstrated a reasonable probability that the Delaware Supreme Court would have reversed and ordered a remand but for appellate counsel's failure to pursue the non-meritorious plain view issue in the initial briefing on direct appeal or in a motion for reargument. Accordingly, the Court will deny Claims Three and Four for failing to satisfy § 2254(d).

### D. Claim Five: IATC for Not Challenging Probable Cause for Traffic Stop and Probable Cause for Count Three of the Indictment

In Claim Five (a), Petitioner contends that trial counsel provided ineffective assistance during the suppression hearing by failing to argue that the officer's decision to forego issuing a traffic ticket for using a cell phone while driving was evidence that the officer lacked probable cause to stop Petitioner in the first place. (D.I. 1 at 12) Petitioner argues that the officer used the fact that he was talking on his cell phone as a pretense for stopping Petitioner. (*See* D.I. 14-7 at 26) The Delaware Supreme Court rejected this argument on post-conviction appeal after determining that there was no basis for trial counsel to challenge the existence of probable cause. The Delaware Supreme Court explained that Petitioner violated Delaware's motor vehicle laws by using a cell phone while driving and, since the officer testified he observed Petitioner driving while using a cell phone, any challenge to the existence of probable cause justifying the initial stop would have been denied as meritless. *See Backus*, 2021 WL 79764, at *4 and n.20.

"As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred," and minor traffic violations can justify a stop. *Whren v. United States*, 517 U.S. 806, 808, 810 (1996) (turning without signaling). The test for probable cause focuses on whether the traffic stop was reasonable, and the "constitutional reasonableness of traffic stops [does not] depend [] on the actual motivations of the individual officers involved." *Id*. at 811-14. The fact that an officer did not issue a ticket for a traffic violation does not alter the determination as to whether the officer possessed a reasonable suspicion to lawfully stop a vehicle.

Petitioner does not deny that he was talking on his cell phone while driving, and the record demonstrates that the officer had probable cause to believe Petitioner violated a Delaware motor vehicle law because he witnessed Petitioner talking on his cell phone while driving. Moreover, contrary to Petitioner's assertion, the officer's failure to issue a traffic ticket does not demonstrate that the officer lacked probable cause to stop the vehicle. Given these circumstances, the Court finds that the Delaware Supreme Court reasonably applied *Strickland* when concluding that Petitioner failed to demonstrate a reasonable probability that the suppression motion would have been granted but for trial counsel's failure to raise a meritless argument about the absence of a traffic ticket indicating an absence of probable cause.

In Claim Five (b), Petitioner argues that trial counsel was ineffective during the suppression hearing for failing to argue that Petitioner could not be indicted for a traffic infraction (Count Three) because the officer did not issue a ticket for driving while talking on a cell phone. (D.I. 1 at 12; D.I. 14-7 at 26) The Superior Court[9] denied this argument because,

---

[9] Although the Delaware Supreme Court did not address this particular argument on post-conviction appeal, the Superior Court rejected the argument as meritless when it denied Petitioner's Rule 61 motion. *See Backus*, 2020 WL 1972856, at *3. In these circumstances, the

"short of trial," "there was no vehicle available to counsel for challenging the Grand Jury indictment for so-called indicting [Petitioner] on Count III of his indictment." *Backus*, 2020 WL 1972856, at *3.

The Court is bound by the Superior Court's interpretation and application of Delaware state law and, therefore, accepts that court's conclusion that trial counsel could not have challenged the legality of Count III during Petitioner's suppression hearing.[10]  Since trial counsel could not have successfully challenged the legal propriety of Petitioner's indictment during the suppression hearing, Petitioner cannot demonstrate that trial counsel performed deficiently by failing to pursue an unavailable avenue for relief.  Petitioner also cannot demonstrate a reasonable probability that his suppression motion would have been granted but for trial counsel's failure to raise an improper argument during the suppression hearing.  Thus, the Court concludes that the Superior Court reasonably applied *Strickland* when denying Claim Five (b).[11]

**E.  Claim Six: IATC for Filing Frivolous Suppression Motion**

In his final Claim, Petitioner contends that trial counsel provided ineffective assistance by filing a frivolous motion to suppress.  He asserts that trial counsel knew "that it was perfectly permissible [for police] to order [him] out of the vehicle during a routine traffic stop." (D.I. 1 at 13)  Petitioner appears to allege that trial counsel "deliberately" wanted the suppression motion to fail because she ignored Petitioner's request to challenge the application of the plain view doctrine.  (*See* D.I. 14-7 at 27-28)

---

Court "looks through" to the Superior Court's analysis when reviewing Claim Five (b) under § 2254(d).

[10] The legality of an indictment is a matter of state law.  *See United States ex rel Wojtycha v. Hopkins*, 517 F.2d 420, 426 (3d Cir. 1975).

[11] The Court also notes that Count III was *nolle prossed.*

The Superior Court[12] denied the IATC argument in Claim Six after finding that the suppression motion raised "issues that a reasonably effective defense attorney legitimately could raise." *Backus*, 2020 WL 1972856, at *3. The Superior Court explained, "[I]t is clear to the Court that the reason the cocaine in [Petitioner's] possession was not suppressed was not due to any failing on trial counsel's part, but rather, to the fact that the cocaine was constitutionally seized." *Id.*

Claim Six essentially re-asserts Petitioner's argument in Claim Two that trial counsel inadequately challenged the officer's testimony that he saw the cocaine in plain view. *See supra* at Section III.B. Re-characterizing trial counsel's alleged ineffectiveness as "filing a frivolous suppression motion" does not aid Petitioner in his quest for relief, because he still has not demonstrated a reasonable probability that his motion to suppress would have been granted but for trial counsel's failure to challenge the applicability of the plain view doctrine to his case. Accordingly, the Court will deny Claim Six for failing to satisfy § 2254(d).

## IV.     CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition does not warrant relief, and is satisfied

---

[12] Once again, the Court "looks through" to the Superior Court's decision because the Superior Court was the last court to provide a reasoned analysis.

that reasonable jurists would not find this conclusion to be debatable.  Accordingly, the Court will not issue a certificate of appealability.

## V.    CONCLUSION

For the reasons discussed, the Court will deny the instant Petition without holding an evidentiary hearing or issuing a certificate of appealability.  An appropriate Order will be entered.

27